## EXHIBIT A

**First Amendment to Asset Purchase Agreement**

## FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT

This First Amendment to Asset Purchase Agreement (this "First Amendment"), dated as of December 15, 2020, by and among Neapolitan Group Holdings, LLC, a Delaware limited liability company ("Neapolitan"), FIC Holdings, LLC, a Delaware limited liability company ("FIC Holdings"), FIC Restaurants, Inc., a Massachusetts corporation ("FIC Restaurants"), Friendly's Restaurants, LLC, a Delaware limited liability company ("Friendly's Restaurants"), Friendly's Franchising, LLC, a Delaware limited liability company ("Friendly's Franchising," and together with Neapolitan, FIC Holdings, FIC Restaurants, Friendly's Restaurants and Friendly's Franchising, "Sellers"), Amici Partners Group, LLC, a Texas limited liability company (together with its permitted successors, designees and assigns, "Buyer"), and Neapolitan, as Sellers' Rep. Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement (as defined below).

**WHEREAS**, the Parties entered into that certain Asset Purchase Agreement, dated as of November 1, 2020, by and among Seller, Buyers and Sellers' Rep (the "Purchase Agreement"); and

**WHEREAS**, the Parties desire to amend the Purchase Agreement to reflect a change in the amount and form of the Purchase Price for the Contemplated Transactions.

**NOW THEREFORE**, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      Section 2.1 of the Purchase Agreement is hereby amended by adding the following subsection (w), which shall be included in the definition of "Purchased Assets": "; and (w) all royalty payments due and payable to Sellers from Franchisees operating the Franchise Restaurants solely with respect to the month of December 2020."

2.      Section 2.5(a)(i) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

> (i)    the payment of an amount in cash (the "Cash Payment") equal to (A) $1,857,500 ("Base Purchase Price"), *plus* (B) the Closing Inventory, *plus* (C) the Closing Restaurant Cash, *plus* (D) Closing Prepaid Expenses, *plus* (E) Closing Security Deposits, *less* (F) the amount by which Closing Unredeemed Gift Cards exceeds $1,263,000, if any, *less* (G) the Closing Restaurant Deferred Rent, *less* (H) the Bloomfield Rent Adjustment (if applicable), *less* (I) the Coke Prebate;

3.      Section 2.7 of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

> The closing of the transactions contemplated by this Agreement (the "Closing") shall take place remotely by electronic exchange of counterpart signature pages commencing at 10:00 a.m. local time (i) if

1

the Sale Order is entered into on or prior to December 24, 2020, on December 31, 2020, or (ii) if the Sale Order is entered into after December 25, 2020, on the first Business Day occurring on or after the fifth (5th) day following the date on which all conditions to the obligations of Sellers and Buyer to consummate the Contemplated Transactions set forth in <u>Article VII</u> (other than conditions with respect to actions Sellers and/or Buyer will take at the Closing itself, but subject to the satisfaction or waiver of those conditions) have been satisfied or waived, or at such other time or on such other date as shall be mutually agreed upon by Sellers and Buyer prior thereto (the "<u>Closing Date</u>"). The Closing shall be deemed to have occurred at 12:01 a.m. (prevailing Eastern Time) on the Closing Date.

4.    Notwithstanding anything to the contrary set forth in the Purchase Agreement, Buyer acknowledges and agrees that, from and after the Closing Date, Buyer and the buying group (as defined in Treasury Regulation Section 54.4980B-9, Q&A-3(b)) of which it is a part shall be solely responsible at their sole cost and expense (other than the payment of COBRA premiums, which is the responsibility of the individuals who elect to participate) for providing continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("<u>COBRA</u>") to those individuals who are M&A qualified beneficiaries (as defined in Treasury Regulation Section 54.4980B-9, Q&A-4(a)) with respect to the transactions contemplated by the Purchase Agreement. Buyer acknowledges and agrees that no Seller shall have any responsibility for providing coverage under, or liability arising from, COBRA.

5.    Exhibit E-1 and Exhibit E-2 to the Purchase Agreement (the Assumed Lease Amendments) are hereby deleted in their entirety and replaced with <u>Exhibit E-1</u> and <u>Exhibit E-2</u> attached hereto.

6.    This First Amendment is hereby incorporated into and shall be a part of the Purchase Agreement. Except as expressly amended and modified herein, all other terms, covenants and conditions of the Purchase Agreement shall remain in full force and effect. To the extent the provisions of this First Amendment conflict or are otherwise inconsistent with the Purchase Agreement, the terms of this First Amendment shall control.

7.    This First Amendment may be executed in multiple counterparts and by facsimile, PDF or electronic signature, each of which shall be deemed to be an original, and all of which when taken together shall constitute one and the same instrument.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties hereto have executed this First Amendment as of the date first above written.

<u>**SELLERS**</u>:

**NEAPOLITAN GROUP HOLDINGS, LLC**

By: _____
Name: T. Todd Schwendenmann
Title: Chief Financial Officer, Treasurer and Secretary

**FIC HOLDINGS, LLC**

By: _____
Name: T. Todd Schwendenmann
Title: Chief Financial Officer, Treasurer and Secretary

**FIC RESTAURANTS, INC.**

By: _____
Name: T. Todd Schwendenmann
Title: Chief Financial Officer, Treasurer and Secretary

**FRIENDLY'S RESTAURANTS, LLC**

By: _____
Name: T. Todd Schwendenmann
Title: Chief Financial Officer, Treasurer and Secretary

**FRIENDLY'S FRANCHISING, LLC**

By: _____
Name: T. Todd Schwendenmann
Title: Chief Financial Officer, Treasurer and Secretary

*[Signature Page to First Amendment to Purchase Agreement]*

**SELLERS' REP**:

Solely in its capacity as Sellers' Rep pursuant to Section 9.23:

**NEAPOLITAN GROUP HOLDINGS, LLC**

By: _____
Name: T. Todd Schwendenmann
Title: Chief Financial Officer, Treasurer and Secretary

**BUYER**:

**AMICI PARTNERS GROUP, LLC**

By: _____
Name: Craig Erlich
Title: President & CEO

*[Signature Page to First Amendment to Purchase Agreement]*

**EXHIBIT E-1**

<u>**Form of Lease Amendment**</u>

[See attached]

## AMENDMENT OF LAND AND BUILDING LEASE AGREEMENT

**THIS AMENDMENT OF LAND AND BUILDING LEASE AGREEMENT** (this "Amendment") dated effective as of [_____], 202[_] (the "**Effective Date**") is made by and between [_____], a [_____] ("**Landlord**"), and **FRIENDLY'S RESTAURANTS, LLC**, a Delaware limited liability company ("**Tenant**"), with reference to the following recitals.

### RECITALS

      **A.**    Landlord is the current holder of the landlord's interest, and Tenant is the current holder of the tenant's interest, under that certain Land and Building Lease Agreement dated December 13, 2001 (as amended and assigned, the "Lease").

      **B.**    Landlord and Tenant desire to further amend the Lease as more particularly set forth herein effective as of the Effective Date.

      **NOW THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### AMENDMENT

      **1.**    **Recitals; Capitalized Terms**.  The Recitals set forth above are incorporated herein by reference.  All capitalized terms used herein, unless otherwise defined, shall have the same meaning as given in the Lease.

      **2.**    **Term**.  The Primary Term of the Lease currently expires on December 31, 2021. Notwithstanding anything to the contrary set forth in Section 3 of the Lease, the Primary Term of the Lease is hereby extended to [_____].[1]  Subject to the provisions of the Lease, Tenant has four (4) Extension Periods of five (5) years remaining.  Notwithstanding the foregoing, Landlord and Tenant acknowledge and agree that if Tenant exercises its right to extend the term of the Lease for the Third Extension Period, the Lease with respect to Store 982 located in Gettysburg, PA ("Store 982") (and only with respect to Store 982) shall terminate on the date that is four (4) years and eleven (11) months after the commencement of such Extension Period.[2]

      3.    **Individual Store Rent**.

      a.    Effective as the Effective Date, the Individual Store Rents for each of the Properties shall be as set forth on **Exhibit A** attached hereto and made a part hereof. For clarification, the only Properties remaining as of the Effective Date are those set forth on **Exhibit A** and the Base Monthly Rent as of the Effective Date of this Amendment through the first (1st) anniversary of the Effective Date of this Amendment is $45,812.09.

---

[1] *Note to Draft*: Date to be inserted should be the last day of the month 15 years after the Effective Date.

[2] *Note to Draft*: Extending the remaining term for Store 982 for an additional 15 years, coupled with the cumulative 20-year option periods will likely subject the lease to Pennsylvania realty transfer tax (which is imposed on leases with terms over 30 years).  As such, the truncated 4th renewal term for this store is the maximum term.

   b. <u>Section 5</u> of the Lease is hereby deleted in its entirety and replaced with the following:

   "On each Adjustment Date, Base Monthly Rent shall be increased by two percent (2%). The new Base Monthly Rent shall be payable in advance in consecutive monthly installments on the first (1st) day of each month until the next Adjustment Date, or the expiration of the term, as the case may be. Landlord's delay or the failure of Landlord, beyond the commencement of any Adjustment Date, in computing or billing for these adjustments will not impair the continuing obligation of tenant to pay the rent adjustments."

Notwithstanding anything to the contrary set forth in the Lease, from and after the Effective Date, "**<u>Adjustment Date</u>**" as used in the Lease shall mean, as the case may require, the first (1st) anniversary of the Effective Date and each anniversary thereafter during the Primary Term (as extended hereby); <u>provided</u>, <u>however</u>, that if the Effective Date is other than the first (1st) day of the month, then "**<u>Adjustment Date</u>**" shall mean, as the case may require, the first (1st) day of the first (1st) month occurring after the first (1st) anniversary of the Effective Date and each anniversary thereafter during the Primary Term (as extended hereby). For illustration purposes only, if the Effective Date is January 8, 2021, then the first (1st) Adjustment Date will be February 1, 2022, and subsequent Adjustment Dates shall be each and every February 1st thereafter during the Primary Term. Base Monthly Rent during any remaining Extension Period shall be determined pursuant to <u>Section 4.3</u> of the Lease.

   c. Notwithstanding anything to the contrary set forth in the Lease, Base Monthly Rent for the months of [*Scenario A*: January, February, March, April and May 2021 / *Scenario B*: February, March, April and May 2021 and January 2022][3] shall be abated at a rate of one hundred percent (100%) (collectively, the "**<u>Abated Rent</u>**"); <u>provided</u>, <u>however</u>, that (i) all Additional Rent due under the Lease during such abatement period shall continue to be paid by Tenant in accordance with the terms of the Lease, (ii) the Abated Rent is strictly conditioned upon the timely performance of Tenant's obligations under the Lease and (iii) if an Event of Default occurs under the Lease (beyond any applicable notice and cure period) (A) any abatement set forth in this <u>Section 3(c)</u> for any period from and after the date of such Event of Default shall immediately cease and Tenant shall be obligated to pay Base Monthly Rent as set forth in the Lease without abatement, and (B) the entire cumulative amount of Abated Rent applied through the date such Event of Default shall be immediately due and payable to Landlord.

   **4.** **<u>Option to Terminate</u>**. Notwithstanding anything to the contrary set forth in the Lease, Tenant shall have the right, after the second (2nd) anniversary of the Effective Date, to terminate the Lease with respect to Store 62 located in Palmer, MA ("**<u>Store 62</u>**") (and only with respect to Store 62) effective upon the third (3rd) anniversary of the Effective Date (the "**<u>Termination Date</u>**") provided and on the condition that (a) Tenant delivers to Landlord no later than sixty (60) days prior to the second (2nd) anniversary of the Effective Date (i) written notice of Tenant's election to exercise the foregoing termination right (the "**<u>Termination Notice</u>**"), and (ii) original, executed counterparts of the Amendment to Lease set forth in <u>Exhibit B</u> attached hereto

---

[3] *<u>Note to Draft</u>*: If the Effective Date is prior to January 1, 2021, Scenario A in bracketed provision to be inserted; if the Effective Date is on or after January 1, 2021, Scenario B in bracketed provision to be inserted.

and the Termination of Memorandum of Lease set forth in <u>Exhibit C</u> attached hereto, and (b) no Event of Default under the Lease exists as of the date of Tenant's delivery of the Termination Notice or on the Termination Date.  Tenant shall surrender Store 62 to Landlord on the Termination Date in the condition required under the Lease.  Subject to the provisions of this <u>Section 4</u>, upon the Termination Date, Tenant shall be released of all obligations and liabilities under the Lease with respect to Store 62 (but only with respect to Store 62) arising from and after the Termination Date; <u>provided</u>, <u>however</u>, that such release shall specifically exclude those obligations which accrued or arose prior to the Termination Date (including, without limitation, accrued rent, if any, due under the Lease and accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease.  Notwithstanding delivery of the Termination Notice, Tenant shall perform all of its obligations with respect to Store 62 as and when required under the Lease up to the Termination Date.  If Tenant fails to timely deliver the Termination Notice as set forth in this <u>Section 4</u>, or if an Event of Default exists either as of the date of Tenant's delivery of the Termination Notice or on the Termination Date, and such Event of Default remains uncured after the expiration of the applicable cure period as set forth in the Lease, Tenant shall be deemed to have irrevocably waived such termination right, and any prior exercise thereof or attempted future exercise thereof shall be null and void.

5.    <u>**Guaranty**</u>.  As a condition to the effectiveness of this Amendment, upon the Effective Date, Tenant shall have delivered to Landlord a Guaranty executed by Amici Partners Group, LLC, a Texas limited liability company, on terms no less favorable than as set forth in that certain Guaranty of Lease dated April 12, 2012 and otherwise in form and substance reasonably acceptable to Landlord.

6.    <u>**Effect of Amendment**</u>.  Except as modified herein, the terms and conditions of the Lease shall remain unmodified and continue in full force and effect. In the event of any conflict between the terms and conditions of the Lease and this Amendment, the terms and conditions of this Amendment shall prevail.

7.    <u>**Counterparts**</u>.  This Amendment may be executed in any number of counterparts, each of which shall be deemed an original.  The counterparts shall together constitute but one agreement.  Any signature on a copy of this Amendment or any document necessary or convenient thereto sent electronically or via facsimile shall be binding upon transmission and the electronic or facsimile copy may be utilized for the purposes of this Amendment.

8.    <u>**Incorporation**</u>. This Amendment is incorporated into the Lease by reference and all terms and conditions of the Lease (except as expressly modified herein) are incorporated into this Amendment by reference.

*[Remainder of Page Left Intentionally Blank]*

3

**IN WITNESS WHEREOF,** the parties have executed this Amendment as of the date and year first above written.

<u>**LANDLORD**</u>:

[_____],
a [_____]


By: _____
Name:
Title:

<u>**TENANT**</u>:

**FRIENDLY'S RESTAURANTS, LLC**,
a Delaware limited liability company


By: _____
Name:
Title:

4

**Exhibit A**

Individual Store Rents

| Count | Store # | Address | Revised Individual Store Rent | |
|---|---|---|---|---|
| | | | Monthly | Annual |
| 1 | 62 | 1519 N. Main Street, Palmer, MA | $4,166.67 | $50,000.00 |
| 2 | 664 | 304 Mountain Avenue, Hackettstown, NJ | $5,000.00 | $60,000.00 |
| 3 | 814 | 748 GAR Highway, Swansea, MA | $6,168.00 | $74,016.00 |
| 4 | 832 | 1811 Boston Road, Springfield, MA | $8,575.75 | $102,909.00 |
| 5 | 870 | 841 Dalton Avenue, Pittsfield, MA | $7,396.00 | $88,752.00 |
| 6 | 982 | 445 Steinwehr Avenue, Gettysburg, PA | $6,229.75 | $74,757.00 |
| 7 | 1232 | 10 Washington Street, Attleboro, MA | $8,275.92 | $99,311.00 |

**Exhibit B**

Form of Amendment and Partial Termination of Land and Building Lease Agreement

## AMENDMENT AND PARTIAL TERMINATION OF
## LAND AND BUILDING LEASE AGREEMENT

**THIS AMENDMENT AND PARTIAL TERMINATION OF LAND AND BUILDING LEASE AGREEMENT** (this "Amendment") dated effective as of [_____], 202[___] (the "Effective Date") is made by and between [_____], a [_____] ("Landlord"), and **FRIENDLY'S RESTAURANTS, LLC**, a Delaware limited liability company ("Tenant"), with reference to the following recitals.

### RECITALS

A.      Landlord is the current holder of the landlord's interest, and Tenant is the current holder of the tenant's interest under that certain Land and Building Lease Agreement dated December 13, 2001 (as amended, the "Lease").

B.      The Lease provides that Landlord leases to Tenant and Tenant leases from Landlord those certain real properties together with all improvements thereon and appurtenances thereunto belonging, which real properties are identified on the "Property List," attached to the Lease as Exhibit "A".

C.      Landlord and Tenant desire to amend the Lease as more particularly set forth herein effective as of the Effective Date.

**NOW THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### AMENDMENT

1.      The Recitals set forth above are incorporated herein by reference.

2.      All capitalized terms used herein, unless otherwise defined, shall have the same meaning as given in the Lease.

3.      Exhibit "A" of the Lease is hereby amended to remove the property set forth on **Schedule 1** attached hereto (the "Premises") from the "Property List".

4.      The Base Monthly Rent is hereby reduced by [_____] and [___]/100ths Dollars ($[_____]).

5.      Effective as of the Effective Date, the Lease is hereby terminated with respect to the Premises (and only the Premises) and is of no further force or effect.  Upon such termination,

6

Landlord and Tenant shall be released from all obligations and liabilities under the Lease with respect to the Premises (and only the Premises) arising from and after the Effective Date; provided, however, that such release shall specifically exclude those obligations which accrued or arose prior to the Termination Date (including, without limitation, accrued rent, if any, due under the Lease, accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease.

6.      Except as specifically amended herein, all terms and conditions of the Lease shall remain in full force and effect. Landlord's execution of this Amendment shall in no way be deemed a waiver of Landlord's rights or remedies under the Lease with respect to any defaults (if any) by Tenant not specifically addressed in this Amendment.

7.      This Amendment may be executed in any number of counterparts, each of which shall be deemed an original.  The counterparts shall together constitute but one agreement.  Any signature on a copy of this Amendment or any document necessary or convenient thereto sent electronically or via facsimile shall be binding upon transmission and the electronic or facsimile copy may be utilized for the purposes of this Amendment.

[Remainder of Page Left Intentionally Blank]

**IN WITNESS WHEREOF**, the parties have executed this Amendment as of the date and year first above written.

**LANDLORD**:

[_____],
a [_____]

By: _____
Name:
Title:

**TENANT**:

**FRIENDLY'S RESTAURANTS, LLC**,
a Delaware limited liability company

By: _____
Name:
Title:

8

SCHEDULE 1

PREMISES

| Count | Store # | Address |
|-------|---------|---------|
| 1 | 62 | 1519 N. Main Street, Palmer, MA |

## Exhibit C

Form of Termination of Memorandum of Lease

Recording requested by, and
After recording return to:

_____
_____
_____
_____

## TERMINATION OF MEMORANDUM OF LEASE

**THIS TERMINATION OF MEMORANDUM OF LEASE** (this "Termination") is made and entered into as of [_____], 202[\_\_] (the "Effective Date") by and between [_____], a [_____] ("Landlord"), and **FRIENDLY'S RESTAURANTS, LLC**, a Delaware limited liability company ("Tenant"), who agree as follows:

## RECITALS

**WHEREAS**, Landlord is the owner of that certain real property, together with all improvements thereon and appurtenances thereunto belonging, the legal description of which is attached hereto and incorporated herein as Exhibit "A," commonly known as 1519 N. Main Street, Palmer, MA (the "Premises");

**WHEREAS**, Landlord, as successor-in-interest to Realty Income Corporation, and Tenant, as successor-in-interest to Friendly Ice Cream Corporation, are parties to that certain Land and Building Lease Agreement dated December 13, 2001 (as amended, the "Lease") with respect multiple parcels of real property including, but not limited to, the Premises;

**WHEREAS**, a memorandum of the Lease with respect to the Premises was recorded on [_____], in Book [\_\_\_\_\_], Page [\_\_\_\_\_] in the Office of the [_____], (the "Memorandum"); and

**WHEREAS**, Landlord and Tenant have agreed to amend the Lease to terminate the Lease with respect to the Premises (and only the Premises) as of the Effective Date, and in connection therewith, Landlord and Tenant desire to terminate the Memorandum.

**NOW THEREFORE**, in consideration of the mutual agreements, promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, the parties agree as follows:

10

1.      <u>Incorporation of Recitals</u>. The aforesaid Recitals are incorporated herein by reference as though they were set forth at length herein.

2.      <u>Termination of Memorandum</u>. The Memorandum is hereby terminated, effective as of the Effective Date.

3.      <u>Binding Effect</u>. This Termination shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

4.      <u>Execution in Counterparts</u>.  This Termination may be executed in any number of counterparts, each of which shall be considered an original, but all of which shall together constitute one and the same instrument.

**[SIGNATURES ON FOLLOWING PAGE]**

      **IN WITNESS WHEREOF**, the parties hereto have executed this Termination as of the date first set forth above.

**<u>LANDLORD</u>:**

          [_____],
          a [_____]

          By: _____
          Name:
          Title:


STATE OF _____           :
                                                                              :
COUNTY OF _____        :


      ON THIS, the [_____] day of [_____], 202[__], before me, the undersigned officer, a Notary Public, personally appeared [_____], who acknowledged himself to be the [_____] of [_____], a [_____], and further acknowledged that he/she, as such officer and being authorized to do so, executed the foregoing instrument as the act and deed of the company, acting in such capacity for the purposes therein contained by signing the name of the company by himself/herself as such officer.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.


_____
Notary Public

My Commission Expires: _____

12

**TENANT**:

**FRIENDLY'S RESTAURANTS, LLC**,
a Delaware limited liability company

By: _____
Name:
Title:


STATE OF _____                    :
                                                 :
COUNTY OF _____                   :


      ON THIS, the [_____] day of [_____], 202[__], before me, the undersigned officer, a Notary Public, personally appeared [_____], who acknowledged himself to be the [_____] of Friendly's Restaurants, LLC, a Delaware limited liability company, and further acknowledged that he/she, as such officer and being authorized to do so, executed the foregoing instrument as the act and deed of the company, acting in such capacity for the purposes therein contained by signing the name of the company by himself/herself as such officer.

      IN WITNESS WHEREOF, I hereunto set my hand and official seal.


_____
Notary Public


My Commission Expires: _____

13

EXHIBIT A

Legal Description

**EXHIBIT E-2**

**Form of Lease Amendment**

[See attached]

## OMNIBUS AMENDMENT OF  LAND AND BUILDING LEASE AGREEMENTS

**THIS OMNIBUS AMENDMENT OF LAND AND BUILDING LEASE AGREEMENT** (this "**Amendment**") dated effective as of [_____], 202[_] (the "**Effective Date**") is made by and between [_____], a [_____] ("**Landlord**"), and **FRIENDLY'S RESTAURANTS, LLC**, a Delaware limited liability company ("**Tenant**"), with reference to the following recitals.

### RECITALS

**A.** Landlord is the current holder of the landlord's interest, and Tenant is the current holder of the tenant's interest, under those certain Land and Building Lease Agreement dated August 30, 2007 (as the same may have been amended and assigned, each a "**Lease**", and collectively, the "**Leases**") for certain real properties, which real properties are more particularly identified on **Exhibit A** attached hereto (collectively, the "**Properties**").

**B.** Landlord and Tenant desire to further amend the Leases as more particularly set forth herein effective as of the Effective Date.

**NOW THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

### AMENDMENT

**1.** **Recitals; Capitalized Terms**.  The Recitals set forth above are incorporated herein by reference.  All capitalized terms used herein, unless otherwise defined, shall have the same meaning as given in the Leases.

**2.** **Term**.  Notwithstanding anything to the contrary set forth in <u>Section 3</u> of the Leases, the Primary Term of each Lease other than the Lease for Store 1082 located in Williston, VT ("**Store 1082**"), the Lease for Store 1237 located in Lebanon, PA ("**Store 1237**"), and the Lease for Store 7689 located in Orlando, FL ("**Store 7689**"), is hereby extended as to [_____].[1]  For purposes of clarity, the expiration of the Primary Term for Store 1082 shall remain September 30, 2027, the expiration of the Primary Term for Store 1237 shall remain January 31, 2029, and the expiration of the Primary Term for Store 7689 shall remain August 31, 2027.  **Exhibit A** attached hereto sets forth the remaining Extension Periods for each Lease.

**3.** **Base Monthly Rent**.

a. Effective as the Effective Date, Base Monthly Rent for each Lease shall be as set forth on **Exhibit A** attached hereto.

---

[1] *Note to Draft*: Insert date certain that is the last day of the month fifteen (15) years after the Effective Date.

1

       b.    <u>Section 5</u> of each Lease is hereby deleted in its entirety and replaced with the following:

> "On each Adjustment Date, Base Monthly Rent shall be increased by two percent (2%). The new Base Monthly Rent shall be payable in advance in consecutive monthly installments on the first (1st) day of each month until the next Adjustment Date, or the expiration of the term, as the case may be. Landlord's delay or the failure of Landlord, beyond the commencement of any Adjustment Date, in computing or billing for these adjustments will not impair the continuing obligation of tenant to pay the rent adjustments."

Notwithstanding anything to the contrary set forth in the Leases, and except with respect to Store 7689 which is addressed in <u>Section 5</u> hereof, from and after the Effective Date, "**<u>Adjustment Date</u>**" as used in each Lease shall mean, as the case may require, the first (1st) anniversary of the Effective Date and each anniversary thereafter during the Primary Term (as extended hereby); <u>provided</u>, <u>however</u>, that if the Effective Date is other than the first (1st) day of the month, then "**<u>Adjustment Date</u>**" shall mean, as the case may require, the first (1st) day of the first (1st) month occurring after the first (1st) anniversary of the Effective Date and each anniversary thereafter during the Primary Term (as extended hereby). For illustration purposes only, if the Effective Date is January 8, 2021, then the first (1st) Adjustment Date will be February 1, 2022, and subsequent Adjustment Dates shall be each and every February 1st thereafter during the Primary Term. Base Monthly Rent during any remaining Extension Period, including any annual increase thereto, shall be determined pursuant to <u>Section 6</u> of the applicable Lease.

       b.    Notwithstanding anything to the contrary set forth in the Leases, Base Monthly Rent for each Lease for the months of [*Scenario A*: January, February, March, April and May 2021 / *Scenario B*: February, March, April and May 2021 and January 2022][2] shall be abated at a rate of one hundred percent (100%) (collectively, the "**<u>Abated Rent</u>**"); <u>provided</u>, <u>however</u>, that (i) all Additional Rent due under the Leases during such abatement period shall continue to be paid by Tenant in accordance with the terms of the Leases, (ii) the Abated Rent is strictly conditioned upon the timely performance of Tenant's obligations under the Leases, and (iii) if an Event of Default occurs under any Lease (beyond any applicable notice and cure period), (A) any abatement set forth in this <u>Section 3(b)</u> for all Leases for any period from and after the date of such Event of Default shall immediately cease and Tenant shall be obligated to pay Base Monthly Rent as set forth in the Leases without abatement, and (B) the entire cumulative amount of Abated Rent applied through the date such Event of Default shall be immediately due and payable to Landlord.

    4.    **<u>Options to Terminate</u>**.

       a.    Notwithstanding anything to the contrary set forth in the Lease for Store 25 located in East Longmeadow, MA ("**<u>Store 25</u>**"), Tenant shall have the right, after the second (2nd) anniversary of the Effective Date, to terminate the Lease for Store 25 effective upon the third (3rd) anniversary of the Effective Date (the "**<u>Termination Date</u>**") provided and on the condition that (a) Tenant delivers to Landlord no later than sixty (60) days prior to the second (2nd) anniversary

---

[2] <u>*Note to Draft*</u>: If the Effective Date is prior to January 1, 2021, Scenario A in bracketed provision to be inserted; if the Effective Date is on or after January 1, 2021, Scenario B in bracketed provision to be inserted.

of the Effective Date (i) written notice of Tenant's election to exercise the foregoing termination right (the "**Store 25 Termination Notice**"), and (ii) an original, executed counterpart of the Termination of Memorandum of Lease set forth in **Exhibit B** attached hereto, and (b) no Event of Default under the Lease for Store 25 exists as of the date of Tenant's delivery of the Store 25 Termination Notice or on the Termination Date.  Tenant shall surrender Store 25 to Landlord on the Termination Date in the condition required under the Lease for Store 25.  Subject to the provisions of this Section 4(a), upon the Termination Date, Tenant shall be released of all obligations and liabilities under the Lease for Store 25 arising from and after the Termination Date; provided, however, that such release shall specifically exclude those obligations which accrued or arose prior to the Termination Date (including, without limitation, accrued rent, if any, due under the Lease for Store 25 and accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease for Store 25.  Notwithstanding delivery of the Store 25 Termination Notice, Tenant shall perform all of its obligations as and when required under the Lease for Store 25 up to the Termination Date.  If Tenant fails to timely deliver the Store 25 Termination Notice as set forth in this Section 4(a), or if an Event of Default exists either as of the date of Tenant's delivery of the Store 25 Termination Notice or on the Termination Date, and such Event of Default remains uncured after the expiration of the applicable cure period as set forth in the Lease, Tenant shall be deemed to have irrevocably waived the termination right set forth in this Section 4(a), and any prior exercise thereof or attempted future exercise thereof shall be null and void.

b.      Notwithstanding anything to the contrary set forth in the Lease for Store 847 located in West Springfield, MA ("**Store 847**"), Tenant shall have the right, after the second (2nd) anniversary of the Effective Date, to terminate the Lease for Store 847 effective upon the Termination Date provided and on the condition that (a) Tenant delivers to Landlord no later than sixty (60) days prior to the second (2nd) anniversary of the Effective Date (i) written notice of Tenant's election to exercise the foregoing termination right (the "**Store 847 Termination Notice**"), and (ii) an original, executed counterpart of the Termination of Memorandum of Lease set forth in **Exhibit B** attached hereto, and (b) no Event of Default under the Lease for Store 847 exists as of the date of Tenant's delivery of the Store 847 Termination Notice or on the Termination Date.  Tenant shall surrender Store 847 to Landlord on the Termination Date in the condition required under the Lease for Store 847.  Subject to the provisions of this Section 4(b), upon the Termination Date, Tenant shall be released of all obligations and liabilities under the Lease for Store 847 arising from and after the Termination Date; provided, however, that such release shall specifically exclude those obligations which accrued or arose prior to the Termination Date (including, without limitation, accrued rent, if any, due under the Lease for Store 847 and accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease for Store 847.  Notwithstanding delivery of the Store 847 Termination Notice, Tenant shall perform all of its obligations as and when required under the Lease for Store 847 up to the Termination Date.  If Tenant fails to timely deliver the Store 847 Termination Notice as set forth in this Section 4(b), or if an Event of Default exists either as of the date of Tenant's delivery of the Store 847 Termination Notice or on the Termination Date, and such Event of Default remains uncured after the expiration of the applicable cure period as set forth in the Lease,

Tenant shall be deemed to have irrevocably waived the termination right set forth in this <u>Section 4(b)</u>, and any prior exercise thereof or attempted future exercise thereof shall be null and void.

        c.      Notwithstanding anything to the contrary set forth in the Lease for Store 1082, Tenant shall have the right to terminate the Lease for Store 1082 effective as of September 30, 2022 (the "**Store 1082 Termination Date**") provided and on the condition that (a) Tenant delivers to Landlord no later than December 31, 2022 (i) written notice of Tenant's election to exercise the foregoing termination right (the "**Store 1082 Termination Notice**"), and (ii) an original, executed counterpart of the Termination of Memorandum of Lease set forth in **Exhibit B** attached hereto, and (b) no Event of Default under the Lease for Store 1082 exists as of the date of Tenant's delivery of the Store 1082 Termination Notice or on the Store 1082 Termination Date. Tenant shall surrender Store 1082 to Landlord on the Store 1082 Termination Date in the condition required under the Lease for Store 1082. Subject to the provisions of this <u>Section 4(c)</u>, upon the Store 1082 Termination Date, Tenant shall be released of all obligations and liabilities under the Lease for Store 1082 arising from and after the Store 1082 Termination Date; <u>provided</u>, <u>however</u>, that such release shall specifically exclude those obligations which accrued or arose prior to the Store 1082 Termination Date (including, without limitation, accrued rent, if any, due under the Lease for Store 1082 and accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease for Store 1082. Notwithstanding delivery of the Store 1082 Termination Notice, Tenant shall perform all of its obligations as and when required under the Lease for Store 1082 up to the Store 1082 Termination Date. If Tenant fails to timely deliver the Store 1082 Termination Notice as set forth in this <u>Section 4(c)</u>, or if an Event of Default exists either as of the date of Tenant's delivery of the Store 1082 Termination Notice or on the Store 1082 Termination Date, and such Event of Default remains uncured after the expiration of the applicable cure period as set forth in the Lease, Tenant shall be deemed to have irrevocably waived the termination right set forth in this <u>Section 4(c)</u>, and any prior exercise thereof or attempted future exercise thereof shall be null and void.

    **5.**      <u>**Store 7689**</u>.[3]

        a.      <u>Base Monthly Rent; Sublease Amendment</u>. Notwithstanding anything to the contrary set forth in <u>Section 3</u> hereof, subject to the provisions of this <u>Section 5</u>, Base Monthly Rent payable pursuant to Store 7689 for the remainder of the Primary Term shall be as follows:

| Period | Base Monthly Rent | Annual Rent |
|---|---|---|
| Effective Date to 12/31/2021 | $10,000.00 | $120,000.00 |
| 1/1/2022 to 12/31/2022 | $13,750.00 | $165,000.00 |
| 1/1/2023 to 12/31/2025 | $15,500.00 | $198,000.00 |

---

[3] <u>*Note to Draft*</u>: If Seller elects to exercise its right to assign the Sublease (defined herein) as set forth in the APA, Section 5 to be marked "Intentionally Omitted".

| 1/1/2026 to 9/30/2027 | $18,500.00 | $222,000.00 |

Provided, however, that in the event Tenant and AARK Hospitality Orlando FR, Inc., a Florida corporation ("**Subtenant**"), have, on or prior to the Effective Date, entered into an amendment (the "**Sublease Amendment**") to that certain Sublease dated April 29, 2013 (the "**Sublease**") with respect to Store 7689 that provides for a base rent that is greater than as set forth in this Section 5(a), Base Monthly Rent payable pursuant to Store 7689 shall be adjusted in accordance with the base rent set forth in such Sublease Amendment. Tenant further acknowledges and agrees that in the event the Sublease Amendment grants to Landlord a right to terminate the Sublease, and Landlord exercises such termination right, (i) the Lease for Store 7689 shall automatically terminate upon the termination of the Sublease, and (ii) Tenant shall terminate (or cause the termination of) any applicable franchise agreement with respect to the Subtenant and Store 7689 (which obligation shall survive the termination of the Lease for Store 7689). Upon such termination, Tenant shall be released of all obligations and liabilities under the Lease for Store 7689 arising from and after such termination; provided, however, that such release shall specifically exclude those obligations which accrued or arose prior to such termination (including, without limitation, accrued rent, if any, due under the Lease for Store 7689 and accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease for Store 7689. Landlord and Tenant acknowledge and agree that notwithstanding any termination of the Sublease set forth in this Section 5(a), Tenant shall not be deemed to have waived any rights or remedies against Subtenant for any defaults occurring after the Effective Date pursuant to the Sublease or Subtenant's applicable franchise agreement. After the Effective Date, Tenant covenants that it will not amend the Sublease without Landlord's prior consent and approval (not to be unreasonably withheld, conditioned or delayed), and that a breach of the foregoing covenant (the "**Sublease Covenant**") shall be deemed an Event of Default under the Lease for Store 7689 without application of any notice or cure period.

      b.    <u>Landlord Termination Right</u>.

      i.    Notwithstanding anything set forth in this Section 5, so long as the Sublease has not been terminated prior to the delivery of a Store 7689 Landlord Termination Notice (defined herein), Landlord shall have the right to terminate the Lease for Store 7689 upon sixty (60) days' prior written to Tenant (the "**Store 7689 Landlord Termination Notice**"), which notice shall set forth the proposed termination date (the "**Landlord 7689 Termination Date**"). In such event, Tenant shall deliver to Landlord, prior to the Landlord 7689 Termination Date, (i) an assignment of the Sublease in form and substance reasonably acceptable to Tenant and Landlord pursuant to which Tenant shall assign to Landlord all of Tenant's right, title and interest as sublandlord under the Sublease, and (ii) an original, executed counterpart of the Termination of Memorandum of Lease set forth in **Exhibit B** attached hereto. Tenant shall surrender Store 7689 to Landlord on the Landlord 7689 Termination Date in the condition required under the Lease for Store 7689, but subject to the Sublease. Subject to the provisions of this Section 5(b), upon the Landlord 7689 Termination Date, Tenant shall be released of all obligations and liabilities under the Lease for Store 7689 arising from and after the Landlord 7689 Termination Date; provided, however, that such release shall specifically exclude those obligations which accrued or arose prior to the Landlord 7689 Termination Date (including, without limitation, accrued rent, if any, due under the Lease for Store 7689 and accrued real property taxes) and those obligations and

5

indemnifications that survive expiration or termination of the Lease for Store 7689. Notwithstanding delivery of the Store 7689 Landlord Termination Notice, Tenant shall perform all of its obligations as and when required under the Lease for Store 7689 up to the Landlord 7689 Termination Date.

ii.    If, prior to the first (1st) anniversary of the Effective Date, Tenant intends to terminate the Sublease, Tenant shall provide written notice to Landlord (the "**Takeover Notice**").  Landlord shall have until the later to occur of (i) the first (1st) anniversary of the Effective Date or (ii) sixty (60) days after receipt of the Takeover Notice to terminate the Lease for Store 7689 pursuant to this Section 5(b)(ii) by delivering the Store 7689 Landlord Termination Notice, which notice shall set forth a Landlord 7689 Terminate Date of no later than sixty (60) days after the date of such notice. In such event, Tenant shall deliver to Landlord, prior to the Landlord 7689 Termination Date, (i) if the Sublease has not been terminated, an assignment of the Sublease in form and substance reasonably acceptable to Tenant and Landlord pursuant to which Tenant shall assign to Landlord all of Tenant's right, title and interest as sublandlord under the Sublease, and (ii) an original, executed counterpart of the Termination of Memorandum of Lease set forth in **Exhibit B** attached hereto.  Tenant shall surrender Store 7689 to Landlord on the Landlord 7689 Termination Date in the condition required under the Lease for Store 7689, but subject to the Sublease if the same has not been terminated.   Subject to the provisions of this Section 5(b), upon the Landlord 7689 Termination Date, Tenant shall be released of all obligations and liabilities under the Lease for Store 7689 arising from and after the Landlord 7689 Termination Date; provided, however, that such release shall specifically exclude those obligations which accrued or arose prior to the Landlord 7689 Termination Date (including, without limitation, accrued rent, if any, due under the Lease for Store 7689 and accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease for Store 7689. Notwithstanding delivery of the Store 7689 Landlord Termination Notice, Tenant shall perform all of its obligations as and when required under the Lease for Store 7689 up to the Landlord 7689 Termination Date.  If Landlord waives its right to terminate the Lease for Store 7689 pursuant to this Section 5(b)(ii), all remaining Extension Periods set forth in the Lease for Store 7689 shall be automatically waived and deleted from the Lease for Store 7689 without any further action required by either party, and the term of such Lease shall expire on August 31, 2027.  For purposes of clarity, if Landlord waives its right to terminate the Lease for 7689 pursuant to this Section 5(b)(ii), Landlord shall retain its rights pursuant to Section 5(b)(i) so long as the Sublease has not been terminated prior to the delivery of a Store 7689 Landlord Termination Notice.

iii.    If, after the first (1st) anniversary of the Effective Date, Tenant intends to terminate the Sublease, Tenant shall provide the Takeover Notice.  Landlord shall have sixty (60) days after receipt of the Takeover Notice to terminate the Lease for Store 7689 pursuant to this Section 5(b)(iii) by delivering the Store 7689 Landlord Termination Notice, which notice shall set forth a Landlord 7689 Terminate Date of no later than sixty (60) days after the date of such notice. In such event, Tenant shall deliver to Landlord, prior to the Landlord 7689 Termination Date, (i) if the Sublease has not been terminated, an assignment of the Sublease in form and substance reasonably acceptable to Tenant and Landlord pursuant to which Tenant shall assign to Landlord all of Tenant's right, title and interest as sublandlord under the Sublease, and (ii) an original, executed counterpart of the Termination of Memorandum of Lease set forth in **Exhibit B** attached hereto.  Tenant shall surrender Store 7689 to Landlord on the Landlord 7689

Termination Date in the condition required under the Lease for Store 7689, but subject to the Sublease if the same has not been terminated.  Subject to the provisions of this <u>Section 5(b)</u>, upon the Landlord 7689 Termination Date, Tenant shall be released of all obligations and liabilities under the Lease for Store 7689 arising from and after the Landlord 7689 Termination Date; <u>provided</u>, <u>however</u>, that such release shall specifically exclude those obligations which accrued or arose prior to the Landlord 7689 Termination Date (including, without limitation, accrued rent, if any, due under the Lease for Store 7689 and accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease for Store 7689. Notwithstanding delivery of the Store 7689 Landlord Termination Notice, Tenant shall perform all of its obligations as and when required under the Lease for Store 7689 up to the Landlord 7689 Termination Date. If Landlord waives its right to terminate the Lease for Store 7689 pursuant to this <u>Section 5(b)(iii)</u>, all remaining Extension Periods set forth in the Lease for Store 7689 shall be automatically waived and deleted from the Lease for Store 7689 without any further action required by either party, and the term of such Lease shall expire on August 31, 2027.  For purposes of clarity, if Landlord waives its right to terminate the Lease for 7689 pursuant to this <u>Section 5(b)(iii)</u>, Landlord shall retain its rights pursuant to <u>Section 5(b)(i)</u> so long as the Sublease has not been terminated prior to the delivery of a Store 7689 Landlord Termination Notice.

c. <u>Tenant Termination Right</u>.  Notwithstanding anything to the contrary set forth in this <u>Section 5</u> or the Lease for Store 7689, Tenant shall have the right to terminate the Lease for Store 7689 effective upon the second (2nd) anniversary of the Effective Date (the "**Tenant 7689 Termination Date**") provided and on the condition that (a) Tenant delivers to Landlord no later than sixty (60) days prior to the first (1st) anniversary of the Effective Date written notice of Tenant's election to exercise the foregoing termination right (the "**Store 7689 Tenant Termination Notice**"), (b) prior to the Tenant 7689 Termination Date, Tenant delivers to Landlord (i) an original, executed counterpart of the Termination of Memorandum of Lease set forth in **Exhibit B** attached hereto, and (ii) provided that the Sublease has not been terminated, an assignment of the Sublease in form and substance reasonably acceptable to Tenant and Landlord pursuant to which Tenant shall assign to Landlord all of Tenant's right, title and interest as sublandlord under the Sublease, and (c) no Event of Default under the Lease for Store 7689 or default of Tenant under the Sublease or breach of the Sublease Covenant exists as of the date of Tenant's delivery of the Store 7689 Tenant Termination Notice or on the Tenant 7689 Termination Date.  Tenant shall surrender Store 7689 to Landlord on the Tenant 7689 Termination Date in the condition required under the Lease for Store 7689, but subject to the Sublease (if the Sublease has not been terminated).  Subject to the provisions of this <u>Section 5(c)</u>, upon the Tenant 7689 Termination Date, Tenant shall be released of all obligations and liabilities under the Lease for Store 7689 arising from and after the Tenant 7689 Termination Date; <u>provided</u>, <u>however</u>, that such release shall specifically exclude those obligations which accrued or arose prior to the Tenant 7689 Termination Date (including, without limitation, accrued rent, if any, due under the Lease for Store 7689 and accrued real property taxes) and those obligations and indemnifications that survive expiration or termination of the Lease for Store 7689.  Notwithstanding delivery of the Store 7689 Tenant Termination Notice, Tenant shall perform all of its obligations as and when required under the Lease for Store 7689 up to the Tenant 7689 Termination Date.  If (A) Tenant fails to timely deliver the Store 7689 Termination Notice as set forth in this <u>Section 5(c)</u>, or (B) if an Event of Default under the Lease for Store 7689 or default of Tenant under the Sublease or breach of the Sublease Covenant exists either as of the date of Tenant's delivery of the Store 7689

7

Tenant Termination Notice or on the Tenant 7689 Termination Date, and such Event of Default remains uncured after the expiration of the applicable cure period as set forth in the Lease, then, in any such event, Tenant shall be deemed to have irrevocably waived the termination right set forth in this <u>Section 5(c)</u>, and any prior exercise thereof or attempted future exercise thereof shall be null and void.

6. **<u>Guaranty</u>**.  As a condition to the effectiveness of this Amendment, upon the Effective Date, Tenant shall have delivered to Landlord a Guaranty executed by Amici Partners Group, LLC, a Texas limited liability company, on terms no less favorable than as set forth in that certain Guaranty of Lease dated April 12, 2012 and otherwise in form and substance reasonably acceptable to Landlord.

7. **<u>Effect of Amendment</u>**. Except as modified herein, the terms and conditions of the Leases shall remain unmodified and continue in full force and effect. In the event of any conflict between the terms and conditions of the Leases and this Amendment, the terms and conditions of this Amendment shall prevail.

8. **<u>Counterparts</u>**.  This Amendment may be executed in any number of counterparts, each of which shall be deemed an original.  The counterparts shall together constitute but one agreement.  Any signature on a copy of this Amendment or any document necessary or convenient thereto sent electronically or via facsimile shall be binding upon transmission and the electronic or facsimile copy may be utilized for the purposes of this Amendment.

9. **<u>Incorporation</u>**. This Amendment is incorporated into the Leases by reference and all terms and conditions of the Leases (except as expressly modified herein) are incorporated into this Amendment by reference.

[*Remainder of Page Left Intentionally Blank*]

**IN WITNESS WHEREOF,** the parties have executed this Amendment as of the date and year first above written.

**LANDLORD**:

[_____], a
[_____]


By: _____
Name:
Title:

**TENANT**:

**FRIENDLY'S RESTAURANTS, LLC**,
a Delaware limited liability company


By: _____
Name:
Title:

9

**Exhibit A**

| Store # | Address | City | State | Monthly Base Rent | | Extension Periods Remaining |
|---|---|---|---|---|---|---|
| | | | | Monthly | Annual | |
| 3 | 697 Southbridge Street | Auburn | MA | $6,403.83 | $76,846.00 | 1 of 8 years; 1 of 7.5 years |
| 25 | 562 N. Main Street | E. Longmeadow | MA | $4,166.67 | $50,000.00 | 1 of 8 years; 1 of 7.5 years |
| 172 | 1745 Northampton Street | Holyoke | MA | $5,560.33 | $66,724.00 | 2 of 8 years; 1 of 7.5 years |
| 175 | 1463 Raritan Road | Clark | NJ | Effective Date to 3/31/21: $4,881.51 per month. 4/1/21 until next Adjustment Date: $6,750.00 per month. | | 2 of 8 years; 1 of 7.5 years |
| 733 | 1469 Boston Prov. Tpke. | Norwood | MA | $8,560.00 | $102,720.00 | 2 of 8 years; 1 of 5 years |
| 790 | 200 Mohawk Trail | Greenfield | MA | $5,056.17 | $60,674.00 | 1 of 8 years; 1 of 9 years |
| 816 | 529 Memorial Drive | Chicopee | MA | $13,059.75 | $156,717.00 | 3 of 8 years |
| 830 | 1160 Main Street | Haverhill | MA | $5,551.75 | $66,621.00 | 2 of 8 years; 1 of 10.5 years |
| 847 | 1094 Riverdale Street | W. Springfield | MA | $4,166.67 | $50,000.00 | 1 of 8 years; 1 of 7 years |
| 859 | 18 Pearson Boulevard | Gardner | MA | $9,996.25 | $119,955.00 | None |
| 868 | 815 Route 146 | Clifton Park | NY | $9,540.08 | $114,481.00 | 2 of 8 years; 1 of 7.5 years |
| 1003 | 147 Loudon Road | Concord | NH | $5,025.17 | $60,302.00 | 2 of 8 years; 1 of 4 years |
| 1082 | 5876 Williston Road | Williston | VT | $5,833.33 | $70,000.00 | None |
| 1237 | 1701 Quentin Road | Lebanon | PA | $6,773.33 | $81,280.00 | None |
| 7473 | 1700 Burrstone Road | New Hartford | NY | $6,891.42 | $82,697.00 | 2 of 8 years; 1 of 9 years |
| 7689 | 8718 International Drive | Orlando | FL | $10,000.00 | $120,000.00 | 3 of 8 years |

**Exhibit B**

Form of Termination of Memorandum of Lease

Recording requested by, and
After recording return to:

_____
_____
_____
_____

## TERMINATION OF MEMORANDUM OF LEASE

**THIS TERMINATION OF MEMORANDUM OF LEASE** (this "Termination") is made and entered into effective as of [_____], 202[\_\_] (the "Effective Date") by and between [_____], a [_____] ("Landlord"), and **FRIENDLY'S RESTAURANTS, LLC**, a Delaware limited liability company ("Tenant"), who agree as follows:

### RECITALS

**WHEREAS**, Landlord is the owner of that certain real property, together with all improvements thereon and appurtenances thereunto belonging ("Premises"), the legal description of which is attached hereto and incorporated herein as Exhibit "A," commonly known as [_____];

**WHEREAS**, Landlord, as successor-in-interest to O Ice, LLC, and Tenant, as successor-in-interest to Friendly Ice Cream Corporation, are parties to that certain Land and Building Lease Agreement dated August 30, 2007 (as amended, the "Lease"), and a memorandum thereof was recorded on [_____] in Book [\_\_\_\_\_], Page [\_\_\_\_] in [_____] (the "Memorandum"); and

**WHEREAS**, Landlord and Tenant have agreed to terminate the Lease as of the Effective Date, and in connection therewith, Landlord and Tenant desire to terminate the Memorandum.

**NOW THEREFORE**, in consideration of the mutual agreements, promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, the parties agree as follows:

1.    Incorporation of Recitals. The aforesaid Recitals are incorporated herein by reference as though they were set forth at length herein.

11

2.      <u>Termination of Memorandum</u>. The Memorandum is hereby terminated, effective as of the Effective Date.

3.      <u>Binding Effect</u>. This Termination shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

4.      <u>Execution in Counterparts</u>.  This Termination may be executed in any number of counterparts, each of which shall be considered an original, but all of which shall together constitute one and the same instrument.

**[SIGNATURES ON FOLLOWING PAGE]**

12

**IN WITNESS WHEREOF**, the parties hereto have executed this Termination as of the date first set forth above.

**LANDLORD**:

[_____],
a [_____]

By: _____
Name:
Title:

STATE OF _____        :
                                     :
COUNTY OF _____       :

ON THIS, the [_____] day of [_____], 202[__], before me, the undersigned officer, a Notary Public, personally appeared [_____], who acknowledged himself to be the [_____] of [_____], a [_____], and further acknowledged that he/she, as such officer and being authorized to do so, executed the foregoing instrument as the act and deed of the company, acting in such capacity for the purposes therein contained by signing the name of the company by himself/herself as such officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: _____

13

     **IN WITNESS WHEREOF**, the parties hereto have executed this Termination as of the date first set forth above.

**TENANT**:

**FRIENDLY'S RESTAURANTS, LLC**,
a Delaware limited liability company

By: _____

Name:

Title:

STATE OF _____          :

                                                      :

COUNTY OF _____      :

     ON THIS, the [_____] day of [_____], 202[__], before me, the undersigned officer, a Notary Public, personally appeared [_____], who acknowledged himself to be the [_____] of Friendly's Restaurants, LLC, a Delaware limited liability company, and further acknowledged that he/she, as such officer and being authorized to do so, executed the foregoing instrument as the act and deed of the company, acting in such capacity for the purposes therein contained by signing the name of the company by himself/herself as such officer.

     IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: _____

14

<u>EXHIBIT A</u>

Legal Description